# KOLENICH  LAW  OFFICE

9435 Waterstone Blvd. Suite 140 Cincinnati, OH 45249

(513) 444-2150 – Fax (513) 297-6065

---

VIA ECF

Nwamaka Anawi, Clerk of the Court
United States Court of Appeals for the Fourth Circuit
Lewis F. Powell Jr. Courthouse and Annex
1100 East Main Street, Suite 501
Richmond, VA 23219

      Re: Notice of Supplemental Authority Pursuant to Rule 28(j)
         *Elizabeth Sines et al., v. Michael Hill et al.,*
         No. 23-1119(L)

Dear Ms. Anawi,

      Appellants/Cross Appellees have become aware of a recently filed Virginia case that substantially supports our argument as to the Virginia punitive damages cap. *Bavely v. Geneva Enters. Inc.,* 2023 Va. Cir. LEXIS 223 at p. 7-18 (November 15, 2023) (attached).

      Although the case did not adopt each and every point raised by cross-appellees it did include a detailed discussion of what constitutes an "action" under Virginia law (pgs. 8-10), explicitly held that the Virginia punitive damages cap is "clear and unambiguous"(p. 8), detailed the appropriate procedure for statutory construction in Virginia when a statute is unambiguous (p. 6) and even cited the District Court ruling here being appealed as precedent for Virginia's punitive damages cap being applied to multi plaintiff cases. (p. 11-12).

      The *Bavely* case also contains a critical reference to a Virginia Supreme Court explanation of what constitutes an "action" under Virginia law and uses that Virginia Supreme Court case in applying Virginia's punitive damages cap. (pgs. 10-11.) Lastly, *Bavely* observes that where a plaintiff voluntarily takes the tactical decision to join all its claims in a single lawsuit it cannot then complain about the punitive damages cap limiting it to a single $350,000 award. (p. 17).

                                               Respectfully Submitted,

                                               s/ James E. Kolenich
                                               James E. Kolenich
                                               Counsel for Nathan Damigo

                                               cc: Counsel of Record via CM/ECF



Neutral
As of: January 23, 2024 7:10 PM Z

# Bavely v. Geneva Enters., Inc.

Circuit Court of Fairfax County, Virginia

November 15, 2023, Decided

Case No. CL-2018-13979[1]

**Reporter**
2023 Va. Cir. LEXIS 223 *

Donald B. Bavely v. Geneva Enters., Inc.

**Prior History:** Geneva Enters., LLC v. Bavely, 2021 Va. Cir. LEXIS 25, 107 Va. Cir. 249 (Feb. 17, 2021)

## Core Terms

post-judgment, punitive damages, cap, lawsuit, jury verdict, final order, consolidated, accrue, parties, decree, damages, cases, per-lawsuit, accrual, tolling, factfinder, single lawsuit, date of entry, principal sum, automatically, Interpreting, appeals, courts, holds, operative fact, jury award, unconditional, pre-judgment, ambiguity, equitable

## Case Summary

### Overview
HOLDINGS: [1]-The court held that Virginia's punitive damages cap, pursuant to *Va. Code Ann. § 8.01-38.1*, applies on a per-lawsuit basis, and a plaintiff may not stack multiple punitive damage caps per claim within the same lawsuit; [2]-The court further held that post-judgment interest begins to accrue from the date that the factfinder assesses the liability of one party to another, such as the day of a jury verdict, unless the amount of damages is uncertain; [3]-Additionally, the court held that there was no automatic tolling of post-judgment interest accrual.

### Outcome
Court issued an Order reducing the jury's punitive damage awards to the statutory cap on a per-lawsuit basis, and declaring that post-judgment interest began to accrue the day the jury issued its verdict.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Damages > Punitive Damages

---

[1] The Court consolidated for trial this case with several others. The following cases are relevant to this OpinionLetter: Donald B. Bavely v. Geneva Enters., Inc., CL-2018-13979 (the "Geneva I lawsuit"); Geneva Enters., LLC, et al. v. Donald B. Bavely, CL-2018-18124 (the "Geneva II lawsuit"); and AV Automotive, LLC, et al. v. Donald B. Bavely, CL-2019-2804 (the "AV lawsuit").

Torts > ... > Punitive Damages > Measurement of Damages > Statutory Requirements

**HN1**[ ]  **Damages, Punitive Damages**

A plaintiff may not stack multiple punitive damage caps per claim within the same lawsuit. *Va. Code Ann. § 8.01-38.1*.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

**HN2**[ ]  **Judgment Interest, Postjudgment Interest**

The Court holds post-judgment interest begins to accrue from the date that the factfinder assesses the liability of one party to another, such as the day of a jury verdict, unless the amount of damages is uncertain. *Va. Code Ann. § 8.01-382*.

Governments > Legislation > Interpretation

**HN3**[ ]  **Legislation, Interpretation**

The Court's primary objective in interpreting a statute is to ascertain and give effect to legislative intent, as expressed by the language used in the statute. Legislative intent is determined from the words contained in the statute. Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used unless the statute provides for a specific definition. When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated. The court determines the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result.

Governments > Legislation > Interpretation

Governments > Courts > Judicial Precedent

**HN4**[ ]  **Legislation, Interpretation**

A statute is ambiguous when it is susceptible to multiple, reasonable interpretations or is capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness of definiteness. Where a statute is found to be ambiguous, the Court must construe the statute with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it. Even so, where controlling case-law has already disposed of an ambiguity in a statute, the doctrine of stare decisis necessitates that this Court apply such authority in interpreting the ambiguity.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Governments > Legislation > Interpretation

Torts > ... > Punitive Damages > Measurement of Damages > Statutory Requirements

*HN5*[ ] **Judgment Interest, Postjudgment Interest**

The plain language of *Va. Code Ann. § 8.01-38.1*, is clear and unambiguous. It caps punitive damages at $350,000 against all defendants in any action. It further mandates that a court reduce any jury award greater than the statutory cap to the cap.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Governments > Legislation > Interpretation

Torts > ... > Punitive Damages > Measurement of Damages > Statutory Requirements

*HN6*[ ] **Judgment Interest, Postjudgment Interest**

An action is interchangeable with the word suit, and shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts. *Va. Code Ann. § 8.01-2(1)*. This definition applies to the entirety of Title 8.01 of the Virginia Code.

Governments > Legislation > Interpretation

*HN7*[ ] **Legislation, Interpretation**

The general rule is that statutes may be considered as in pari materia when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects. Statutes which have the same general or common purpose or are parts of the same general plan are also ordinarily considered as in pari materia.

Civil Procedure > ... > Pretrial Judgments > Nonsuits > Voluntary Nonsuits

*HN8*[ ] **Nonsuits, Voluntary Nonsuits**

Virginia's nonsuit statute, *Va. Code Ann. § 8.01-380(A)*, provides that a party shall not be allowed to suffer a nonsuit as to any cause of action or claim before the action has been submitted to the court for decision. Interpreting this provision, the Virginia Supreme Court wrote that an action is comprised of the claims and parties remaining in the case after any other claims and parties have been dismissed with prejudice or otherwise eliminated from the case. A cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action. Thus, an action and a cause of action are quite different. An action may include several causes of action; to wit, an action may include multiple sets of operative facts that may give rise to rights of action.

Civil Procedure > Remedies > Damages > Punitive Damages

Torts > ... > Punitive Damages > Measurement of Damages > Statutory Requirements

*HN9*[ ] **Damages, Punitive Damages**

*Va. Code Ann. § 8.01-38.1*'s use of the phrase in any action imports the Supreme Court's understanding that an action pertains to all of the claims and parties remaining in the case after any other claims and parties have been dismissed with prejudice or otherwise eliminated from the case. It follows that, without regard to the varying sets of operative facts in an action, the statutory cap on punitive damages applies to all claims in a case, as a collective.

Civil Procedure > Remedies > Damages > Punitive Damages

*HN10*[ ] **Damages, Punitive Damages**

Interpreting Virginia's punitive damages statute, the Court of Appeals for the Fourth Circuit has held if finds no ambiguity in the punitive damages statute and conclude that its plain meaning dictates that the cap on punitive damage awards applies to the action as a whole, and not to each defendant.

Governments > Legislation > Interpretation

*HN11*[ ] **Legislation, Interpretation**

The statutory interpretation doctrine does not concern the wisdom of legislative acts. An absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation.

Civil Procedure > Pretrial Matters > Conferences > Case Management

Governments > Courts > Authority to Adjudicate

*HN12*[ ] **Conferences, Case Management**

Courts have many tools to manage a docket. They may break up a lawsuit and order a separate trial for any claim therein. *Va. Code Ann. § 8.01-272*. They may, as the Court did in the present series of cases, consolidate multiple lawsuits for a single trial. *Va. Code Ann. § 8.01-267.1*. This does not mean parties must bring separate lawsuits for every claim they seek to litigate. To be sure, cases that, inter alia, are the same in nature, arise from the same act or transaction, involve the same or like issues, and depend substantially upon the same evidence should be consolidated. In the context of the punitive damages statute, this means that matters consolidated in a single lawsuit are subject to the $350,000 statutory cap.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

*HN13*[ ] **Judgment Interest, Postjudgment Interest**

By its plain language, the statute proceeds in three steps. First, it provides for the discretionary imposition of interest on any principal sum awarded and the commencement date for such interest—i.e., pre-judgment interest. *Va. Code Ann. § 8.01-382*. Second, it provides for the mandatory imposition of post-judgment interest until the principal sum of the final order or jury verdict is paid. Third, the statute provides for a default rule whereby when a final order fails to provide for interest, the final order or jury verdict shall bear interest at the judgment rate from its date of entry or from the date that the jury verdict was rendered.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

HN14[ ] **Judgment Interest, Postjudgment Interest**

Relying on Dairyland Ins. Co. v. Douthat, the court reiterates the principle that post-judgment interest is not an element of damages, but is a statutory award for delay in the payment of money actually due. But interest is allowed, because it is natural justice that he who has the use of another's money should pay interest for it.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

HN15[ ] **Judgment Interest, Postjudgment Interest**

Given that civil juries are charged with serving as the factfinder and fixing the amount of a judgment debt in applicable cases, the court further held that post-judgment interest will accrue from the date of the verdict until the judgment is paid. Only in a case tried without a jury would this Court need to fix the date upon which post-judgment interest begins to accrue as to the award. In essence, Upper Occoquan provides for the principle that post-judgment interest begins to accrue on the date that a factfinder has assessed a party as indebted to another, without regard to whether such assessment has been rendered enforceable by the issuance of an order, judgment, or decree.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Governments > Courts > Authority to Adjudicate

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

HN16[ ] **Judgment Interest, Postjudgment Interest**

The General Assembly has expanded the availability for interest to extend to actions brought pursuant to the Virginia Administrative Process Act, and impose the same requirements on final orders regarding the provision of interest as already previously existed for judgments or decrees of the Court.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Governments > Courts > Judicial Precedent

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

HN17[ ] **Judgment Interest, Postjudgment Interest**

The doctrine of stare decisis is at its zenith when an issue of statutory interpretation has already been decided by the Virginia Supreme Court. Post-judgment interest remains mandatory and runs from the date the factfinder rendered an assessment of liability.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

HN18[ ] Judgment Interest, Postjudgment Interest

The second step of *Va. Code Ann. § 8.01-382* plainly mandates the imposition of post-judgment interest. The first clause of the third step indicates that it applies to situations where a final order, judgment or decree is rendered without providing for interest.

Civil Procedure > ... > Jury Trials > Verdicts > General Verdicts

Governments > Courts > Authority to Adjudicate

HN19[ ] Verdicts, General Verdicts

It is well-established that a court speaks only through its written orders. By proxy, a jury's verdict is not enforceable as an assessment of liability until its fact-findings are incorporated into a final order.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > Trials > Jury Trials > Province of Court & Jury

HN20[ ] Judges, Discretionary Powers

Alternatively, if the Court has discretion, it exercises that discretion to fix the commencement of interest on the day of the jury verdict.

Civil Procedure > ... > Stays of Judgments > Appellate Stays > Money Judgments

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Civil Procedure > ... > Stays of Judgments > Appellate Stays > Supersedeas Bonds

Civil Procedure > Judgments > Enforcement & Execution > Writs of Execution

HN21[ ] Appellate Stays, Money Judgments

The General Assembly addresses the treatment of interest accrual during appeals. First, the law permits a judgment debtor to stay the execution of a judgment by filing a supersedeas bond during the pendency of an appeal. *Va. Code Ann. § 8.01-676.1*. A collection action freezes but interest accrues. If the judgment debtor prevails on appeal, the debtor owes neither the judgment nor interest on it. Otherwise, the debtor owes the accruing interest.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Contracts Law > Remedies > Ratification

**HN22**[ ] **Judgment Interest, Postjudgment Interest**

Twelve years after the ratification of the United States Constitution, the Virginia Supreme Court has held that a plaintiff is not entitled to post-judgment interest during an appeal which he prosecutes, where damages are at issue on appeal and are uncertain or unliquidated. Under Virginia law, a plaintiff is not entitled to post-judgment interest during an appeal which he prosecutes.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

**HN23**[ ] **Judgment Interest, Postjudgment Interest**

Whether post-judgment interest is tolled by the prosecution of an appeal is a matter of equity, and depends on the circumstances of the case.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

**HN24**[ ] **Judgment Interest, Postjudgment Interest**

The Skipwith cases hold that interest cannot accrue post-judgment where the issue of the kind of consideration due under a contract is at issue on appeal, since interest cannot accrue on the value of an object or animal unliquidated.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Real Property Law > Landlord & Tenant > Rent Regulation > Methods

Real Property Law > Landlord & Tenant > Landlord's Remedies & Rights > Rent Recovery

**HN25**[ ] **Judgment Interest, Postjudgment Interest**

The principle of Skipwith has most consistently been interpreted to prevent the accrual of interest in cases brought for the recovery of rent arrearages. The spirit of Virginia law is, to allow interest in almost all cases of a liquidated demand for money. However interest is not recoverable, of course, upon rent; but may be recovered, upon circumstances which justify the allowance.

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

**HN26**[ ] **Judgment Interest, Postjudgment Interest**

There is no automatic tolling of interest pending appeal where the quantum of damages is certain.

Business & Corporate Compliance > ... > Contracts Law > Standards of Performance > Delivery & Tender

Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Torts > ... > Types of Damages > Judgment Interest > Post Judgment Interest

Governments > Legislation > Statute of Limitations > Tolling

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

*HN27*[⬇]  **Standards of Performance, Delivery & Tender**

The court held that the actual production of the money will be dispensed with when the party to whom the offer is made refuses to receive the money before it is actually produced, and bases his refusal, not on the ground that it is not produced, nor on the ground that the amount produced is not the exact amount, but on some collateral and entirely distinct ground. Whether a tender has been made and whether such a tender was unconditional is a question of fact for the factfinder where the facts are in dispute. When no facts on these points are in dispute, however, the question is purely a question of law. In situations like the one faced in therefore, a party may stop the running of interest, as well as secure to the creditor the amount due him by paying the sum purportedly tendered into the court. Stated differently, an unconditional tender of payment that the creditor declines to accept equitably tolls the accrual of post-judgment interest.


Business & Corporate Compliance > ... > Contracts Law > Standards of Performance > Delivery & Tender

*HN28*[⬇]  **Standards of Performance, Delivery & Tender**

As discussed in Henderson, when a creditor refuses to accept an unconditional tender offer, the impetus is on the debtor to pay that tender offer into the Court to stop the running of interest.


Civil Procedure > Remedies > Judgment Interest > Postjudgment Interest

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

*HN29*[⬇]  **Judgment Interest, Postjudgment Interest**

Accrual of post-judgment interest is not automatically stayed during the pendency of an appeal, absent a showing that the amount of damages is uncertain and at issue for such an appeal.

**Counsel:** [*1] For Donald B. Bavely: Robert R. Vieth, Esq., Mihir V. Elchuri. Esq., HIRSCHLER FLEISCHER, P.C., Tysons, Virginia.

For AV Automotive, LLC and Geneva Enters., Inc., Plaintiffs: Timothy C. Bass, Esq., Nicholas D. SanFilippo, Esq., GREENBERG TRAURIG, LLP, McLean, Virginia.

For Geneva Enters., Inc.: Edward W. Cameron, Esq., CAMERON/MCEVOY PLLC, Fairfax, Virginia.

**Judges:** David A. Oblon, Judge.

**Opinion by:** David A. Oblon

# Opinion

The parties raise three post-verdict issues in this case. First, does Virginia's punitive damages cap apply per-lawsuit or per-claim within a lawsuit? Remarkably, no controlling legal authority directly addresses this question. If the cap applies per-lawsuit, the cap is $350,000. If it applies per-claim the cap could be many times that amount.

Second, from when does post-judgment interest begin to accrue? Is it the day of the jury verdict, the day the Court enters the final order, the day the appeal deadline passes, or some other day? And third, is post-judgment interest automatically stayed to provide for appeals?

The Court holds that Virginia's punitive damages cap applies on a per-lawsuit basis. *HN1*[↑] A plaintiff may not stack multiple punitive damage caps per claim within the same lawsuit. VA. CODE ANN. §8.01-38.1.

*HN2*[↑] The Court **[*2]** further holds post-judgment interest begins to accrue from the date that the factfinder assesses the liability of one party to another, such as the day of a jury verdict, unless the amount of damages is uncertain. *Va. Code Ann. § 8.01-382*. And, the Court holds there is no automatic tolling of post-judgment interest accrual.

The Court will issue an Order (1) reducing the jury's punitive damage awards to the statutory cap on a per-lawsuit basis, and (2) declaring that post-judgment interest began to accrue the day the jury issued its verdict.

**I. BACKGROUND**.

These are (hopefully) the last issues to adjudicate in seven related lawsuits the Court consolidated for trial. Each of the cases featured similar parties and issues related to the ownership and management of an automobile dealership empire. Relevant to this Opinion Letter, both AV and Geneva[2] alleged that Bavely, among other things, breached his fiduciary duties to each of the respective parties and converted company resources in the process. (*See generally* AV lawsuit, Third Am. Compl.; Geneva II lawsuit, Fifth Am. Compl.) Conversely, Bavely alleged that AV and Geneva breached a set of express and implied contractual duties to Bavely. (*See generally* Geneva **[*3]** I lawsuit, Sec. Am. Compl.) In essence, Bavely sought a return to his role *status quo ante* at the helm of the aggrieved corporate parties, while AV and Geneva sought Bavely's divestiture from their companies.

The Court consolidated these matters for one jury trial by Order entered June 19, 2020. All parties had their own objections to this consolidation—Bavely would only have the matters consolidated if the case was heard in a bench trial, while Geneva would consent to consolidation but would not waive trial by jury. (June 19, 2020, Consolidation Order.) Notably, the Consolidation Order did not consolidate all the lawsuits into one, nor did it bar any party from bringing additional, separate lawsuits. In fact, case number CL-2020-18740 was not filed until November 30, 2020. While it advanced new claims on behalf of Bavely, it was nonetheless heard as part of the consolidated trial.

Ultimately, the single trial for the seven distinct lawsuits commenced August 3, 2022, to November 2, 2022, on the law and equity claims advanced by all parties.[3] On November 2, 2022, the jury returned its verdict.[4] In the Geneva I lawsuit, the jury awarded Bavely $4,562,506.31 in compensatory damages, and $500,000 **[*4]** in punitive damages. (*See* Bavely Mot., Ex. 1.) In the Geneva II lawsuit, the jury awarded Geneva $331,746.83 in compensatory damages, and $750,000 in punitive damages between two separate claims. (*See id.*, Ex. 2.) In the AV lawsuit, the jury awarded Bavely, on his counterclaim, $17,654,445 in compensatory damages. (*See id.*, Ex. 3.)

---

[2] The Court refers to the Plaintiffs in the AV lawsuit as "AV." Likewise, the Court refers to the Defendant in the Geneva I lawsuit, and the Plaintiffs in the Geneva II lawsuit, as "Geneva."

[3] The COVID pandemic primarily caused the long delay in the trial of these matters.

[4] Shortly after the jury handed down its verdict, but before the Court adjudicated the parties' equitable claims, the parties in CL-2018-11424 (*RBD of Virginia, LLC, et al. v. Donald B. Bavely*), CL-2019-13200 (*Donald B. Bavely v. Jaguar Land Rover of Chantilly, et al.*), CL-2020-7497 (*Donald B. Bavely v. Dealer PPC, LLC*), and CL-2020-18740 (*Donald B. Bavely v. Fairfax Imports, Inc., et al.*) came to a settlement agreement. This agreement was approved and adopted by the Court as a final order, dismissing those actions with prejudice, on December 6, 2022.

On October 27, 2023, Bavely, AV, and Geneva came before the Court to argue purely legal issues in pursuit of the entry of final orders in these respective cases. Bavely argued that (1) the plain language of *Virginia Code § 8.01-38.1* caps punitive damages at $350,000 on a per-case basis; and (2) post-judgment interest should run from the date the jury rendered its verdict pursuant to *Upper Occoquan Sewage Authority v. Blake Construction Co., 275 Va. 41, 655 S.E.2d 10 (2008)*, (*See* Bavely Mot. at 1-5.)

Geneva argues that (1) there is no controlling case-law on the issue of whether the punitive damages cap applies on a per-claim or per-lawsuit basis, (2) Geneva's claims arose out of distinct sets of operative fact for which they should be awarded the maximum amount of punitive damages on **[*5]** each, and (3) it would be inequitable to cap the Geneva parties' punitive damages on a per-lawsuit basis since these matters were purportedly consolidated over their objection. (*See* Geneva II lawsuit, Geneva Opp'n at 2-5.)

AV principally argues that (1) *Upper Occoquan* is inapplicable in this case because *Virginia Code § 8.01-382* has been amended since that case was decided, (2) the plain language of *Virginia Code § 8.01-382* vests the Court with discretion to determine the date from which post-judgment interest should run, and (3) regardless, Bavely is not entitled to any post-judgment interest during the pendency of any appeals that may be taken in these matters. (*See* AV Opp'n at 2-5.)

## II. ANALYSIS.

The questions presented to the Court are purely legal questions of statutory interpretation. *HN3*[↑] ] The Court's primary objective in interpreting a statute is to "ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Berry v. Bd. of Supervisors, 884 S.E. 2d 515, 520 (Va. 2023)*. Legislative intent is determined from the "words contained in the statute." *Id.* (quoting *Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468 (2003)*). Words in a statute "are to be construed according to their ordinary meaning, given the context in which they are used" unless the statute provides for a specific definition. *Id.* (quoting *City of Virginia Beach v. Board of Supervisors, 246 Va. 233, 236, 435 S.E.2d 382, 10 Va. Law Rep. 256 (1993)*). "When **[*6]** the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated." *Williams, 265 Va. at 271*; *see also Wright v. Commonwealth, 278 Va. 754, 759, 685 S.E.2d 655 (2009)* ("[W]e determine the legislative intent from the words used in the statute, applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result.").

*HN4*[↑] ] A statute is ambiguous when it is susceptible to multiple, reasonable interpretations or is "capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness of definiteness[.]" *Newberry Station Homeowners Ass'n, Inc. v. Bd. of Sup'rs of Fairfax Cnty., 285 Va. 604, 614, 740 S.E.2d 548 (2013)* (quoting *Ayres v. Harleysville Mut. Casualty Co., 172 Va. 383, 393, 2 S.E.2d 303 (1939)* (defining "ambiguity" as "the effect of words that have either no definite sense or else a double one")). Where a statute is found to be ambiguous, the Court must construe the statute with "reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." *Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523 (2003)* (citing *Stanley v. Tomlin, 143 Va. 187, 195, 129 S.E. 379 (1925)*); *see also Auer v. Commonwealth, 46 Va. App. 637, 647-48, 621 S.E.2d 140 (2005)*. Even **[*7]** so, where controlling case-law has already disposed of an ambiguity in a statute, the doctrine of *stare decisis* necessitates that this Court apply such authority in interpreting the ambiguity. *See Oraee v. Breeding, 270 Va. 488, 497, 621 S.E.2d 48 (2005)* ("To adopt the plaintiff's position would require that we overrule our decision in [*Auer v. Miller*], and he asks us to do so. Thus, the doctrine of *stare decisis* is necessarily implicated.").

**A. Virginia's Punitive Damages Cap Applies on a Per-Lawsuit Basis**.

Understandably, Geneva wants every penny of the punitive damage award in the jury's verdict—$750,000 between two separate claims within a single lawsuit: *Geneva Enters., LLC, et al. v. Donald B. Bavely*, CL-2018-18124 (the "Geneva II lawsuit"). The jury awarded Geneva $500,000 on Count I (Breach of Fiduciary Duty/Improper Personal Use of Corporate Resources) and $250,000 on Count XXIII (Conversion/Interest Payments on the AV Loan). Geneva argues that Virginia law sets forth a separate, $350,000 cap per each distinct claim in its lawsuit and that it is entitled to an effective cap of $700,000 in the present case. Bavely argues that Virginia's punitive damages cap is on a per-lawsuit basis and wants the jury's $750,000 punitive damages award **[*8]** reduced to the $350,000 cap. No controlling legal authority directly addresses the per-lawsuit versus per-claim issue.[5]

*Virginia Code § 8.01-38.1*, in pertinent part, provides that:

> In any *action* ... the total amount awarded for punitive damages against all defendants found to be liable shall be determined by the trier of fact. In no event shall the total amount awarded for punitive damages exceed $350,000. . . . [I]f a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award and enter judgment for such damages in the maximum amount provided by this section. (Emphasis added).

HN5[↑] ] The plain language of the statute is clear and unambiguous. It caps punitive damages at $350,000 against all defendants in any *action*. It further mandates that a court reduce any jury award greater than the statutory cap to the cap.

HN6[↑] ] An "action" is interchangeable with the word "suit," and "shall include all civil proceedings whether upon claims at law, in equity, or statutory in nature and whether in circuit courts or district courts." *Va. Code Ann. § 8.01-2(1)*. This definition applies to the entirety of *Title 8.01 of the Virginia Code*. *Id.* Obviously, Virginia's punitive damages limitation statute **[*9]** is in Title 8.01. See VA. CODE ANN. § 8.01-38.1.

While Virginia courts have not spoken to the practical significance of this definition in the context of the statutory punitive damages cap, Virginia courts have done so in the context of the nonsuit statute. HN7[↑] ] "The general rule is that statutes may be considered as *in pari materia* when they relate to the same person or thing, the same class of persons or things or to the same subject or to closely connected subjects or objects." *Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4 (1957)*. "Statutes which have the same general or common purpose or are parts of the same general plan are also ordinarily considered as *in pari materia*." *Lucy v. Cnty. of Albemarle, 258 Va. 118, 129, 516 S.E.2d 480 (1999)* (quoting *id.*) Because both the nonsuit statute, *Virginia Code § 8.01-380*, and the statutory punitive damages cap, *Virginia Code § 8.01-38.1*, derive their definition of the word "action" from the same statutory provision in *Virginia Code § 8.01-2(1)*, the Court reads the statutes' use of the word "action" as *in pari materia*. Hence, the Court construes the use of the word "action" in the statutory punitive damages cap in a manner consistent with the use of the same word in the context of the nonsuit statute. *Cf. Prillaman, 199 Va. at 405-06* ("Statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia*, and should be construed together[.]"). **[*10]**

---

[5] The Supreme Court of Virginia has rarely interpreted the statutory cap. *See, e.g., Egan v. Butler, 290 Va. 62, 73-78, 772 S.E.2d 765 (2015)* (discussing circumstances under which a corporation can be held liable for punitive damages); *Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 124-25, 501 S.E.2d 148 (1998)* (holding that the statutory cap on punitive damages does not also apply to treble damages). The Virginia Court of Appeals considered **Virginia Code § 8.01-38.1** once. *See Nestler v. Scarabelli, 77 Va. App. 440, 463-66, 886 S.E.2d 301 (2023)* (noting that "**Code § 8.01-38.1** limits recovery on punitive damages to $350,000"). No other circuit court considered the precise question presented in the case at bar. *See, e.g., Hicks v. Martin, 106 Va. Cir. 229, at \*\* 1-2 (Culpeper 2020)* (holding that a plaintiff can plead and argue for punitive damages in excess of the statutory cap, even if damages cannot be awarded in excess of the cap); *Fid. Nat'l Title Ins. Co. v. Wash. Settlement Group, LLC, 87 Va. Cir. 77, at \*\* 15-16 (Fairfax 2013)* (holding that "the cap pertains to the amount of punitive damages that may be recovered by a successful party, not the amount that may be sought in the complaint and to which a jury may find a defendant liable"); *Foster v. Wintergreen Real Estate Co., 81 Va. Cir. 353, at \*9 (Nelson 2010)* (holding that **Virginia Code § 8.01-38.1** is self-activating and that "[b]y law, if the punitive damages exceed $350,000, they must be reduced by the court to that amount") (further concluding that the statute "applies to the entire lawsuit rather than to each individual defendant"). Thus, the question presented is one of first impression.

*HN8*[↑] ] Virginia's nonsuit statute, *Code § 8.01-380(A)*, provides that "a party shall not be allowed to suffer a nonsuit as to any cause of action or claim ... before the action has been submitted to the court for decision." Interpreting this provision, the Virginia Supreme Court wrote that an *action* is "comprised of the claims and parties remaining in the case after any other claims and parties have been dismissed with prejudice or otherwise eliminated from the case." *Dalloul v. Agbey, 255 Va. 511, 514, 499 S.E.2d 279 (1998)*. A *cause of action* is "a set of operative facts which, under the substantive law, may give rise to a right of action." *Trout v. Commonwealth Transp. Comm'r of Va., 241 Va. 69, 73, 400 S.E.2d 172, 7 Va. Law Rep. 1305 (1991)* (quoting *Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 6 Va. Law Rep. 447 (1989)*). Thus, "[a]n 'action' and a 'cause of action' are quite different." *Id.* An "action" may include several "causes of action"; to wit, an action may include multiple sets of operative facts that may give rise to rights of action. Since "action" and "suit" are synonymous, the punitive damages cap applies to multiple causes of action within one lawsuit. *HN9*[↑] ] Virginia Code § 8.01-38.1's use of the phrase "[i]n any *action*" imports the Supreme Court's understanding that an action pertains to all of the "claims and parties remaining in the case after any other claims and parties have been dismissed with prejudice or otherwise eliminated from the case." [*11] *Dalloul, 255 Va. at 514*. It follows that, without regard to the varying sets of operative facts in an action, the statutory cap on punitive damages applies to all claims in a case, as a collective. Cf. *Bulala v. Boyd, 239 Va. 218, 228, 389 S.E.2d 670, 6 Va. Law Rep. 1399 (1990)* (applying the medical malpractice award cap to the total damages recoverable to a patient regardless of the number of legal theories upon which the claims are based).

Our federal step-sibling courts have addressed analogous issues to the present one. Does Virginia's statutory cap on punitive damage awards apply to the action as a whole or to each *defendant* therein? *HN10*[↑] ] Interpreting Virginia's punitive damages statute, the Court of Appeals for the Fourth Circuit held: "We find no ambiguity in the [punitive damages] statute and conclude that its plain meaning dictates that the cap on punitive damage awards applies to the action as a whole, and not to each defendant." *Al-Abood v. El-Shamari, 217 F.3d 225, 237 (4th Cir. 2000)*.

Relatedly, does Virginia's statutory cap on punitive damage awards apply to the action as a whole or to each *plaintiff* therein? Interpreting Virginia's punitive damages statute, the District Court for the Western District, citing to and extending *Al-Abood*, held: "Virginia's punitive damages cap applies to the action as a whole and not as to each plaintiff." [*12] *Sines v. Kessler, No. 3:17-CV-72, 2022 U.S. Dist. LEXIS 233715, 2022 WL 18026336 at *28 (W.D. Va. 2022)* (cleaned up). In reaching the conclusion the district court wrote:

> Plaintiffs assert that the central interpretative question is whether the statutory term "action" refers to the proceeding as a whole, or, instead, to each plaintiff's right of action. Plaintiffs' phrasing of the question would appear to suggest the answer. The statutory cap only says that it applies "in *any action*," not "a *plaintiff's* action," or "*each plaintiff's* right of action," suggesting the legislature did not mean the former to mean the latter.

*Id.* (cleaned up but emphasis in original). See also *E.I. du Pont de Nemours & Co. v. Kolon Indus., No. 3:09-CV-58, 2011 U.S. Dist. LEXIS 134821, 2011 WL 5872895 at *2 (E.D. Va. 2011)* (noting that Virginia's Uniform Trade Secrets Act imposes a $350,000 cap without regard to the number of trade secrets misappropriated).

Logically, if punitive damages are limited to an "action as a whole" as applied to multiple defendants in a single lawsuit, multiple plaintiffs in a single lawsuit, and multiple counts of trade secret misappropriation in a single lawsuit, it should apply to the multiple causes of action Geneva brought in a single lawsuit.

Geneva defines "action" differently than the Court or the federal courts referenced above. It defines action—for the purposes of the statutory punitive damages cap—as [*13] a set of claims brought pursuant to a distinct, yet common, nucleus of operative fact. (*See* Geneva II, Opp'n at 3-4.) Thus, it argues, it is not limited to $350,000 in punitive damages total across all of their separate claims. (*See* Bavely Mot. at 4-5.)

Geneva supports its definition with an appeal to policy. It contends a "per-lawsuit" punitive damages cap nonsensically prevents litigants from stacking punitive damages in a single lawsuit when they could otherwise effectively do so by bringing multiple lawsuits. (*See* Geneva II, Opp'n at 3.) Geneva argues that the General Assembly when drafting *Virginia Code § 8.01-38.1* only contemplated a situation in "which there were one set of

facts against multiple defendants." (*Id.*) In the present case, however, it sued a single defendant "for multiple wrongful acts that arose out of multiple unique and independent fact patterns," each of which could have been filed as a distinct lawsuit, "that resulted in multiple awards of differing amounts of punitive damages." (*Id.* at 3-4.) It calls a "per-lawsuit cap rule" interpretation an absurd result. If a party could bring two lawsuits with two separate punitive damage caps, why would the law impose one cap if a party merged **[*14]** those two lawsuits into one only for judicial economy? In the present case, Geneva brought 24 counts in its lawsuit with counts as separate and distinct as improper use of corporate resources and conversion of interest payments on an entirely separate loan. If punitive damages for these counts are capped if a party brings them in one lawsuit, but multiplied if they are broken out into two or more lawsuits, everyone with punitive damage counts will inconveniently clutter the docket with multiple lawsuits that should be one.

The policy Geneva proposes is not bad, it is just not Virginia's policy. First, Geneva misapplies the "absurd results" doctrine. *HN11*[↑] This statutory interpretation doctrine does not concern the wisdom of legislative acts. "An absurd result describes an interpretation that results in the statute being internally inconsistent or otherwise incapable of operation." *City of Charlottesville v. Payne, 299 Va. 515, 532, 856 S.E.2d 203 (2021)*. So, the fact that Geneva claims to offer a better policy is no reason for a court to disregard the plain meaning of a statute.

Second, Geneva may be overstating its concern. *HN12*[↑] Courts have many tools to manage a docket. They may break up a lawsuit and order a separate trial for any claim therein. *Va. Code Ann. § 8.01-272*. They may, as the **[*15]** Court did in the present series of cases, consolidate multiple lawsuits for a single trial. *Va. Code Ann. § 8.01-267.1*. This does not mean parties must bring separate lawsuits for every claim they seek to litigate. To be sure, cases that, *inter alia*, are the same in "nature, arise from the same act or transaction, involve the same or like issues, [and] depend substantially upon the same evidence" should be consolidated. *Clark v. Kimnach, 198 Va. 737, 745-46, 96 S.E.2d 780 (1957)*. In the context of the punitive damages statute, this means that matters consolidated in a single lawsuit are subject to the $350,000 statutory cap. Conversely, cases that arise from separate acts, transactions, issues, and evidence need not be consolidated, and could properly be brought as separate actions, each with a separate $350,000 punitive damages cap.

To this point, the Geneva parties suggest that they were forced to consolidate their claims, but this suggestion is wrong. (*See* Geneva II, Opp'n at 3 (describing how their multiple claims "could have [each] been filed as a distinct lawsuit, but for the Court's order consolidating these litigations").) The Court's Consolidation Order never prevented the parties from bringing additional actions—indeed, one action that was drawn into the consolidated **[*16]** trial was not filed until over five months after the Court entered its Consolidation Order.[6] The Court did not order consolidation of all the lawsuits into one lawsuit; it instead tried all the separate lawsuits at the same time. In fact, the jury returned its verdicts on forms separated by lawsuit.

Geneva made a choice, and, strategically, it was not a bad one *ex ante*. Following the Court's consolidation of these underlying cases for trial, Geneva decided to amend its Complaint to bring several additional claims which arose out of distinct sets of operative facts. (*Compare* Geneva II, Original Compl. (alleging eleven counts) *with* Fifth Am. Compl. (alleging over twenty counts).) For instance, Geneva initially brought several claims relating to Bavely's alleged misappropriation of corporate resources, including breaches of fiduciary duty and conversion. These claims arose out of the same set of operative facts, relied on the same evidence, witnesses, issues, and transactions, and therefore were appropriately brought in one action. It later brought, *inter alia*, several sexual impropriety claims against Bavely. Each of those claims dealt with specific alleged female victims, unique facts, **[*17]** and distinct evidence and issues. Geneva could have brought those claims in separate actions. However, Geneva clearly wanted the jury to consider the universe of Bavely's alleged malfeasance—financially, sexually, ethically, and morally. It was seeking tens of millions in damages on these bases. Focusing on those tens of millions and not the mere hundreds of thousands from punitive damages, Geneva had the incentive to ensure that a single jury considered all of Bavely's behavior at the same time. It knew that the Court could reconsider its Consolidation Order. Packing all its claims in one lawsuit increased the chances that the jury would hear Geneva's economic

---

[6] *See* case number CL-2020-18740, filed on November 30, 2020.

claims along with assertions of Bavely's bad behavior. In retrospect the jury did not deliver as Geneva hoped on the malfeasance claims, but at the time Geneva filed its final amended complaint its strategy could have been brilliant.

The fact that Geneva chose a single lawsuit is the present reality. Based on this reality, Geneva is not entitled to recover more than the statutory punitive damages cap for both claims on which the jury awarded it punitive damages. The law limits Geneva to $350,000 in punitive damages for the single **[*18]** action that it brought.

**B. Post-Judgment Interest Begins to Accrue Upon the Jury Verdict**.

The November 2, 2022, jury verdict did not provide for pre- or post-judgment interest. AV asks the Court to, as a matter of discretion, fix the commencement date for post-judgment interest at the date of the entry of a final order. (AV Opp'n at 6.) The Court lacks this discretion.

Alternatively, if the Court has the discretion to delay the accrual of interest, it will not exercise its discretion to delay it in this case. Once the jury announced its monetary award it necessarily found that Bavely should have the money. Since AV was then in possession of money that should have been in Bavely's possession, it should pay Bavely for its use of his money—the interest. This makes special sense in the context of this case wherein AV primarily prevailed on equitable matters related to the expulsion of Bavely from the management, control, and ownership of AV and related companies. AV enjoyed this expulsion benefit since 2017, when it unilaterally expelled him. It is fair that Bavely earn interest on his effective buy-out award from the moment the jury announced the award.

> Virginia Code § 8.01-382 provides, in pertinent part, that: **[*19]**
> [i]n any ... action at law or suit in equity, the final order [or] verdict of the jury ... may provide for interest on any principal sum awarded . . . and fix the period at which the interest shall commence. The final order, judgment or decree entered shall provide for such interest until such principal sum be paid. If a final order, judgment or decree be rendered which does not provide for interest, the final order, judgment or decree awarded or jury verdict shall bear interest at the judgment rate ... from its date of entry or from the date that the jury verdict was rendered.

*HN13*[] By its plain language, the statute proceeds in three steps. First, it provides for the discretionary imposition of interest on "any principal sum awarded" and the commencement date for such interest—*i.e.*, pre-judgment interest. Va. Code Ann. § 8.01-382. Second, it provides for the mandatory imposition of post-judgment interest until the principal sum of the final order or jury verdict is paid. *Id.* Third, the statute provides for a default rule whereby when a final order fails to provide for interest, the final order or jury verdict "*shall* bear interest at the judgment rate ... from its date of entry or from the date that the jury verdict **[*20]** was rendered." *Id.* (emphasis added).

The Virginia Supreme Court has already interpreted the effect of Virginia Code § 8.01-382 in *Upper Occoquan*. There, the court held that a circuit court did not err in concluding that post-judgment interest began to accrue on the date of a 2003 jury verdict, rather than the date of entry of a final order in 2005. Upper Occoquan Sewage Authority v. Blake Constr. Co., Inc., 275 Va. 41, 65, 655 S.E.2d 10 (2008) ("Thereafter, interest would accrue on the award of compensatory damages as a matter of law, and it was not necessary for the court to recite this in its order."). While the statute does not speak in terms of pre- or post-judgment interest, the court noted that "pre-judgment interest is discretionary with the trier of fact, while the application of post-judgment interest for all money judgments is mandatory." *Id. at 63*. *HN14*[] Relying on Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631, 449 S.E.2d 799 (1994), the court reiterated the principle that "post-judgment interest is not an element of damages, but is a statutory award for delay in the payment of money actually due." *Id. at 63-64*; *see also* Jones v. Williams, 6 Va. (2 Call) 102, 106 (1799) ("But interest is allowed, because it is natural justice that he who has the use of another's money should pay interest for it.")

From there, the court concluded that Virginia Code § 8.01-382 is "clear and unambiguous as to when, and how, the application of post-judgment interest begins." **[*21]** *Id. at 64*. The court determined that the statute "provides that post-judgment interest shall begin to accrue on the date that a fixed amount of a judgment debt is rendered by the factfinder[.]" *Id.* *HN15*[] Given that civil juries are charged with serving as the factfinder and fixing the amount of a

judgment debt in applicable cases, the court further held that "post-judgment interest will accrue from the date of the verdict until the judgment is paid." *Upper Occoquan, 275 Va. at 64*. Only in a case tried without a jury would this Court need to "fix the date upon which post-judgment interest begins to accrue as to [the] award." *Id.* In essence, *Upper Occoquan* provides for the principle that post-judgment interest begins to accrue on the date that a factfinder has assessed a party as indebted to another, without regard to whether such assessment has been rendered enforceable by the issuance of an order, judgment, or decree.

AV asserts that *Upper Occoquan* is bad law since Virginia Code § 8.01-382 was amended shortly after the decision in 2008, and again in 2009. (AV Opp'n at 3.) The Court disagrees.

The iteration of Virginia Code § 8.01-382 in force at the time *Upper Occoquan* was decided provided that:

> [i]n any action at law or suit in equity, the verdict of the jury, or if no jury **[*22]** the judgment or decree of the court, may provide for interest on any principal sum awarded... and fix the period at which the interest shall commence. The judgment or decree entered shall provide for such interest until such principal sum be paid. If a judgment or decree be rendered which does not provide for interest, the judgment or decree awarded or jury verdict shall bear interest at the judgment rate . . . from its date of entry or from the date the jury verdict was rendered.

2004 Virginia Laws Ch. 646 (H.B. 1460). *Upper Occoquan* was decided on January 11, 2008; the General Assembly amended the statute less than two months later, on March 3, 2008. In amending the statute, however, the General Assembly's revisions were minimal, and only marginally substantive. The General Assembly altered the statute to provide:

> [i]n *any Administrative Process Act action* or action at law or suit in equity, the *final order*, verdict of the jury, or if no jury the judgment or decree of the court, may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence. The *final order*, judgment or decree entered shall provide for such interest until such principal sum be paid. **[*23]** If a *final order*, judgment or decree be rendered which does not provide for interest, the *final order*, judgment or decree awarded or jury verdict shall bear interest at the judgment rate of interest . . . from its date of entry or from the date that the jury verdict was rendered.

2008 Virginia Laws Ch. 219 (H.B. 882) (amendments italicized). These amendments, if anything, only served to broaden the scope of the General Assembly's provision for interest on judgments and jury verdicts. *HN16*[↑] The General Assembly expanded the availability for interest to extend to actions brought pursuant to the Virginia Administrative Process Act, and impose the same requirements on final orders regarding the provision of interest as already previously existed for judgments or decrees of the Court.

The 2009 amendments to Virginia Code § 8.01-382 were equally as cosmetic as the 2008 amendments. There, the General Assembly added a single provision to the statute: "Final orders may be recorded, enforced, and satisfied as orders or decrees of a circuit court upon certification of such orders by the agency head or his designee." Va. Code Ann. § 8.01-382.

None of these amendments changed the substantive provisions that were key to the Virginia Supreme Court's holding in *Upper Occoquan*. Ultimately, **[*24]** every iteration of the statute has proceeded in the same three steps—providing for the discretionary fixation of the date of commencement for pre-judgment interest, the mandatory imposition of post-judgment interest, and a default imposition of interest in the absence of an express statement in a court's order or a jury verdict. The fact that the General Assembly has broadened the scope of Virginia Code § 8.01-382 to encompass actions brought pursuant to the Virginia Administrative Process Act, or has otherwise clarified that the statute's provisions apply to final orders, is inapposite.

To this point, the Virginia Supreme Court has reiterated the holdings of *Upper Occoquan* in the years since the General Assembly's amendments to Virginia Code § 8.01-382. *See* Sidya v. World Telecom Exchange Commc'ns, LLC, 301 Va. 31, 47-50, 870 S.E.2d 199 (2022) (affirming a trial court's award of post-judgment interest from the

date of a 2015 jury verdict where final order was not entered until 2020) (holding that post-judgment interest "will accrue" from the date of the jury verdict until the judgment is paid "even if the amount of the jury verdict is later reduced by the trial court").

Hence, Upper Occoquan has not been superseded by these legislative actions. HN17[↑] The doctrine of *stare decisis* is "at its zenith" when an issue of statutory [*25] interpretation has already been decided by the Virginia Supreme Court. See Hampton v. Meyer, 299 Va. 121, 138, 847 S.E.2d 287 (2020) (Kelsey, J. dissenting). Post-judgment interest remains mandatory and runs from the date the factfinder rendered an assessment of liability.

AV tries to parry *Upper Occoquan* by focusing on a line of cases interpreting the first sentence of Virginia Code § 8.01-382; these cases, however, are irrelevant to this Court's analysis because they all deal with the imposition of pre-judgment interest. *See, e.g.,* Shepard v. Capitol Foundry of Virginia, Inc., 262 Va. 715, 722, 554 S.E.2d 72 (2001) (noting that the award of pre-judgment interest is a matter in the sound discretion of the factfinder); Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 126, 501 S.E.2d 148 (1998) (same); Skretvedt v. Kouri, 248 Va. 26, 36-37, 445 S.E.2d 481, 10 Va. Law Rep. 1441 (1994) (same); J. W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 325, 377 S.E.2d 605, 5 Va. Law Rep. 1859 (1989) (same); Marks v. Sanzo, 231 Va. 350, 356, 345 S.E.2d 263 (1986) (same); Wolford v. Williams, 195 Va. 489, 499, 78 S.E.2d 660 (1953) (same).[7]

AV glosses over the import of the second and third steps of Virginia Code § 8.01-382. HN18[↑] The second step of the statute plainly mandates the imposition of post-judgment interest. The first clause of the third step indicates that it applies to situations where a "final order, judgment or decree" is rendered without providing for interest. The second clause then provides that, by default, interest "shall" run at the judgment rate[8] from "its date of entry or from the date that the jury verdict was rendered."

Notably, the first clause does not speak in terms of jury verdicts, but this is no oversight. [*26] HN19[↑] "It is well-established that a court speaks only through its written orders." Shareholder Representative Servs., LLC v. Airbus Americas, Inc., 292 Va. 682, 691, 791 S.E.2d 724 (2016). By proxy, a jury's verdict is not enforceable as an assessment of liability until its fact-findings are incorporated into a final order. See Bright v. Commonwealth, 31 Va. App. 488, 492, 524 S.E.2d 175 (2000). Thus, the second clause is construed as providing for post-judgment interest at the judgment rate bearing from the date of the jury verdict if one has been entered, regardless of whether it has already been incorporated into a final order.

Applied to the case at bar, the Court determines that, as a matter of law, post-judgment interest began to accrue on the damages assessed by the jury from the date of the entry of the jury verdict, or November 2, 2022. HN20[↑] Alternatively, if the Court has discretion, it exercises that discretion to fix the commencement of interest on the day of the jury verdict.

### C. Post-Judgment Interest Does Not Toll for Appeals Absent Supersedeas Bond.

AV contends that even if post-judgment interest began to accrue on the date of the jury verdict in this matter, Bavely is automatically unentitled to any such interest until after he has prosecuted any appeals he intends to take. (AV

---

[7] The AV parties only cite to one case whereby the Supreme Court of Virginia affirmed an award of interest pursuant to Virginia Code § 8.01-382 based on discretion where such interest was, in effect, post-judgment interest. See Safway Steel Scaffolds of Va., Inc. v. Coulter, 198 Va. 469, 478, 94 S.E.2d 541 (1956) ("Under the circumstances of this case, the trial court did not abuse its discretion in awarding interest from the date it determined the merits of the case."). As with all of the cases cited by the AV parties, however, this case was decided almost half a century before the Virginia Supreme Court rendered its ruling in *Upper Occoquan*. Thus, the line of cases cited by the A V parties are inapposite.

[8] "The judgment rate of interest shall be an annual rate of six percent, except that a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent annually, whichever is higher." Va. Code Ann. § 6.2-302.

Opp'n at 4.) The Court holds there is no automatic stay or tolling of **[\*27]** interest pending a potential or actual appeal.

*HN21*[⬆] The General Assembly addresses the treatment of interest accrual during appeals. First, the law permits a judgement debtor to stay the execution of a judgment by filing a supersedeas bond during the pendency of an appeal. *See generally* Va. Code Ann. § 8.01-676.1. Collection action freezes but interest accrues. If the judgment debtor prevails on appeal, the debtor owes neither the judgment nor interest on it. Otherwise, the debtor owes the accruing interest. This answers AV's otherwise interesting policy question. "What if Bavely prevails and this Court's ruling on the equitable claims is reversed? Would he owe interest? How would the [AV and Geneva] parties compel him to do so? Would they have to file an unjust enrichment claim if he refused to voluntarily return the money?" (AV Opp'n at 5 n.10.) Second, the law expressly provides for the imposition of interest if a judgment is affirmed on appeal. Va. Code Ann. § 8.01-682.

Relatedly, AV also contends Bavely never desired monetary damages in the first place—he has explicitly expressed a preference for equitable relief and will not be satisfied unless an appellate court determines that he is entitled to such relief. (*Id.* at 4-5.) To this **[\*28]** point, AV asserts that because Bavely previously refused to accept AV's purportedly "unconditional offer to pay the jury verdict as full and final settlement of the AV claims," Bavely should not be entitled to recover post-judgment interest until appellate proceedings are concluded. (*Id.* at 5.) AV's position is appealing to the extent that a party should not have to pay interest on money it presents to the other side to satisfy a jury award but that the other side refuses to take. However, that is not what happened in the present case and the Court will not stay or toll the accrual of interest on this basis.

**1. There is no Automatic Tolling of Interest**.

Notwithstanding Virginia Code §§ 8.01-682 and 676.1, AV reaches back to 1800 to support its position that interest tolls for appeals. (*Id.* at 4.) *HN22*[⬆] Twelve years after the ratification of the United States Constitution, our Supreme Court held that a plaintiff is not entitled to post-judgment interest during an appeal which he prosecutes, where damages are at issue on appeal and are uncertain or unliquidated. *Skipwith v. Clinch*, 6 Va. (2 Call) 253 (1800) ("Nor ought the plaintiffs to have interest from the time of the decree; because they had themselves appealed as well as with Skipwith, and therefore contributed **[\*29]** to rendering the amount uncertain and undetermined still."); *see also Roy Stone Transfer Corp. v. Budd Co.*, 796 F.2d 720, 723 n.6 (4th Cir. 1986) (noting that *Skipwith* stands "for the proposition that under Virginia law a plaintiff is not entitled to post-judgment interest during an appeal which he prosecutes"). AV relies on *Skipwith* for the proposition that post-judgment interest, writ large, is unavailable during any appeal, insofar as appellate action could result in an alteration of the amount of damages, or a change in the remedy to be awarded.

*HN23*[⬆] Whether post-judgment interest is tolled by the prosecution of an appeal is a matter of equity, and depends on the "circumstances of [the] case[.]" *See Stearns v. Mason*, 65 Va. (24 Gratt.) 484, 494 (1874). For instance, in *Skipwith*, the parties disputed the type of currency to be used in transactions relating to a lease—the plaintiff contended that the lease was to be paid by *specie*, or "good money," while the defendant asserted that the lease was only to be paid by paper money. *Skipwith*, 6 Va. 253. The trial court determined that the contract was to be paid in paper money, but the plaintiff disputed this determination. *Id.* Because the value of *specie* and paper money, at that time, varied, plaintiff's appeal created significant uncertainty as to the amount of damages owed by defendant.[9] *Id.* Thus, post-judgment **[\*30]** interest did not accrue throughout the pendency of the appeal as a matter of equity, because the amount of damages was uncertain and undetermined. *Id.*

---

[9] To wit, contracts payable by *specie* might have contemplated the provision of a leasehold estate in exchange for, *inter alia*, unregulated gold coins, a number of horses per year, or a share of crops grown on a particular parcel. *HN24*[⬆] Thus, the *Skipwith* cases hold that interest cannot accrue post-judgment where the issue of the kind of consideration due under a contract is at issue on appeal, since interest cannot accrue on the value of an object or animal unliquidated.

Cases where post-judgment interest did not accrue during the pendency of appellate proceedings have featured similar facts. *See, e.g., Stearns, 65 Va. at 486, 494* (holding that post-judgment interest did not accrue pending appeal where the underlying controversy related to the kind of currency to be paid in a land-sale contract) ("[I]t would be inequitable ... to require the appellee to pay interest; and this mainly upon the ground of the uncertainty and doubt as to the amount he was owing, and whether he was owing anything.") ("This court has repeatedly held that when accounts were unliquidated and disputed between the parties, interest ought not to be allowed."). HN25[↑] The principle of *Skipwith* has most consistently been interpreted to prevent the accrual of interest in cases brought for the recovery of rent arrearages. *See e.g., Mickie v. Lawrence,, 26 Va. (5 Rand.) 571, 576 (1827)* ("The spirit of our law is, to allow interest in almost all cases of a liquidated demand for money .... however ... interest is not recoverable, of course, upon rent; but may be recovered, upon circumstances which justify the allowance."); [*31] *Newton v. Wilson, 13 Va. (3 Hen. & M.) 470, 496-97 (1809)* (noting that historically rent was paid in *specie*—which did not yield interest—and therefore interest could be denied in rent arrearages cases where rent was not paid in paper currency).

AV further relies on *Wolford* and *McLean* on this point. (AV Opp'n at 4.) *Wolford* was a case where a principal issue at trial was the amount of damages; thus, the Supreme Court affirmed a trial court's denial of pre-judgment interest to the prevailing parties due to the uncertain and unliquidated nature of the damages. *Wolford v. Williams, 195 Va. 489, 499, 78 S.E.2d 660 (1953)* ("Under all the circumstances we are of the opinion that Wolford's claims remained unliquidated in nature and disputed in amount until the actual date of judgment. The trial court, therefore, did not abuse its discretion in awarding interest only from the date of its judgment."). Likewise, in *McLean*, the "main purpose of the [defendants'] cross-bill" was the liquidation of their claim against the plaintiff, and therefore the court held that pre-judgment interest was inappropriate. *McLean v. Hill, 185 Va. 346, 352, 38 S.E.2d 583 (1946)* ("Not until the entry of the decree which confirmed the master's report and distributed the fund was the amount due McLean and Wright fixed.").

Here, the Court is not faced with facts like the *Skipwith* line of cases. The damages [*32] have been fixed, are liquidated, and are certain in nature. There is no doubt that the damages are to be paid in a discreet and measurable currency—namely, U.S. dollars—upon which interest is readily calculated.

In one final argument to persuade this Court to stay the accrual of interest during any intended appellate proceedings, AV provides in a footnote that "Virginia follows the majority rule across the United States," citing *Barth v. Barth, 293 S.C. 305, 360 S.E. 2d 309 (S.C. 1987)* for reference. (AV Opp'n at 4 n.8.) There, the South Carolina Supreme Court held, in the context of equitable distribution, that "even if interest runs ... until [an award is] paid . ... interest does not accrue during appeal when the appeal is made by the judgment creditor on the basis of a claim of inadequacy and the finding is upheld." *360 S.E. 2d at 311*.

AV's reliance on the principle in *Barth* is misplaced. There is no Virginia authority adopting the position pronounced by the South Carolina Supreme Court. The court in *Barth* was faced with an appeal whereby a judgment creditor unsuccessfully contended that the trial court's award of a lump sum payment in an equitable distribution award was insufficient. *Id. at 309*. In other words, *Barth* stands for a proposition similar to *Skipwith;* [*33] *i.e.*, that where damages are at issue on appeal and are uncertain or undetermined in nature, an award of interest is inappropriate.

HN26[↑] There is no automatic tolling of interest pending appeal as AV claims where, as is here, the quantum of damages is certain.

### 2. AV's Tender Offer was Conditional.

AV's final argument as to post-judgment interest avers that in December 2022 it made a purportedly "unconditional" offer to pay Bavely the principal sum due and owing under the jury's verdict. Therefore, it argues, it has "no obligation to tender payment to Bavely or into the Court." (AV Opp'n at 5; *see also* Opp'n, Ex. C.) To support its position, AV relies on *Henderson v. Foster, 139 Va. 543, 124 S.E. 463 (1924)*. In *Henderson*, the plaintiff offered stock as collateral for a loan from the defendant, after which the defendant pledged the stock to secure a loan from a third-party. *Id. at 563*. Upon discovering the defendant's action, plaintiff made an *unconditional* offer to pay the

total balance due on the loan from defendant, which defendant refused because he "claimed that a larger amount was due him than the amount offered[.]" *Id.*

HN27[⬆] The *Henderson* court held that the

> actual production of the money will be dispensed with when the party to whom the offer is made refuses to receive the **[*34]** money before it is actually produced, and bases his refusal, not on the ground that it is not produced, nor on the ground that the amount produced is not the exact amount, but on some collateral and entirely distinct ground.

*Id.* Whether a tender has been made and whether such a tender was unconditional is a question of fact for the factfinder where the facts are in dispute. *Id. at 562-63*. When no facts on these points are in dispute, however, the question is purely a question of law. *Id.* In situations like the one faced in *Henderson*, therefore, a party may "stop the running of interest, as well as secure to the [creditor] the amount due him" by paying the sum purportedly tendered into the court. *Id. at 564*. Stated differently, an unconditional tender of payment that the creditor declines to accept equitably tolls the accrual of post-judgment interest.

However, in the present case, AV admitted in oral argument that its tender offer was conditional—it was conditioned on Bavely's appeal waiver, making it very different than *Henderson*. In *Henderson*, the plaintiff offered to pay, in total, his debt to defendant without any strings attached—*i.e.*, Henderson did not ask Foster to sacrifice any claims he may have had against him, or to otherwise **[*35]** lay down something of value. Here, AV concedes its offer to pay Bavely the jury verdict award was conditional. Bavely was and is entitled to pursue his equitable claims to the extent permissible by law. Any offer that would require him to forgo such claims is inherently conditional. Even if AV's tender offer could be understood as being unconditional, that fact alone would not automatically stay the accrual of interest. HN28[⬆] As discussed in *Henderson*, when a creditor refuses to accept an unconditional tender offer, the impetus is on the debtor to pay that tender offer into the Court to "stop the running of interest." *Henderson, 139 Va. at 563*. The Court will not order the tolling of interest due to AV's conditional offer of satisfaction.

### III. CONCLUSION.

The Court holds that the statutory punitive damages cap applies on a "per-lawsuit basis" and not a "per-claim therein basis," based on the plain language of *Virginia Code § 8.01-38.1*.

The Court further holds that post-judgment interest begins to run from the date the factfinder assesses the liability of one party to another, or from the date of the jury verdict in this case. Alternatively, the Court exercises its discretion to commence interest accrual at the day of the jury verdict. HN29[⬆] The Court further **[*36]** holds that accrual of post-judgment interest is not automatically stayed during the pendency of an appeal, absent a showing that the amount of damages is uncertain and at issue for such an appeal.

An appropriate Order is attached.

/s/ David A. Oblon

David A. Oblon

Judge, Circuit Court of Fairfax County

19th Judicial Circuit of Virginia

---